UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――――

ALFONSO GARCIA,

|  | **REPORT AND** |
| --- | --- |
|  | **RECOMMENDATION** |

                    Plaintiff,

                                                          10-CV-1458
                                                          (GTS/VEB)
              v.

MICHAEL J. ASTRUE,
Commissioner of Social Security ,


                    Defendant.

―――――――――――――――――――――――――――――


## I. INTRODUCTION

In January of 2007, Plaintiff Alfonso Garcia applied for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act.  Plaintiff alleges that he had been unable to work since May of 2006 due to physical and mental impairments.  The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff commenced this action by and through his attorneys, Lachman & Gorton, Peter A. Gorton, Esq., of counsel, seeking judicial review of the unfavorable portion of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 18).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for SSI benefits and DIB on January 9, 2007, alleging disability beginning on May 1, 2006. (T at 102-104, 107-109).[1]  The claims were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held in Binghamton, New York on June 23, 2009, before ALJ Robert E. Gale.  (T at 19). Plaintiff, accompanied by an attorney, appeared and testified.  (T at 23-43).

 On August 27, 2009, ALJ Gale issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act and was thus not entitled to benefits. (T at 9-18).  The ALJ's decision became the Commissioner's final decision on November 10, 2010, when the Appeals Council denied Plaintiff's request for review.  (T at 1-3).

Plaintiff, by and through his attorneys, timely commenced this action on December 3, 2010.  (Docket No. 1).  The Commissioner interposed an Answer on March 29, 2011. (Docket No. 7).  Plaintiff filed a Brief in support of his action on July 29, 2011. (Docket No. 13).  Defendant filed a Brief in opposition on October 13, 2011. (Docket No. 15).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is recommended that the Commissioner's motion be

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 8).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

denied, Plaintiff's motion be granted, and this case be remanded for further proceedings.

## III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

3

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2006.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2006, the alleged onset date.  (T at 11).

The ALJ concluded that Plaintiff had the following impairment, which the ALJ considered "severe," as defined under the Act: degenerative disc disease, lumbrosacral. (T at 11).   The ALJ found that several of Plaintiff's alleged impairments (i.e. asthma, hypertension, bell's palsy, drug abuse and alcoholism, and depression) were non-severe impairments at step two of the sequential evaluation process. (T at 11-14).   The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 14).

The ALJ concluded that Plaintiff retained the residual functional capacity to lift/carry

10 pounds occasionally and less than 10 pounds frequently; stand/walk for 6 hours in an 8-hour day; and sit for 6 hours in an 8-hour day.  The ALJ found that Plaintiff could occasionally stoop, kneel, crouch, and crawl; but should not climb ladders or scaffolds, and should avoid concentrated exposure to fumes, dust, odors, and gases. (T at 14-17).

The ALJ determined that Plaintiff did not have any past relevant work. (T at 17). Considering Plaintiff's age (44 years old on the alleged onset date), education (high school), work experience (no past relevant work), and residual functional capacity, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 17-18).  As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, from May 1, 2006 (the alleged onset date) through August 27, 2009 (the date of the ALJ's decision). (T at 18).

As noted above, the ALJ's decision became the Commissioner's final decision on November 10, 2010, when the Appeals Council denied Plaintiff's request for review.  (T at 1-3).

**2.     Plaintiff's Claims**

Plaintiff argues that the Commissioner's decision should be reversed. Plaintiff offers five (5) principal arguments in support of his position.  First, Plaintiff contends that the ALJ did not properly evaluate his treating physician's opinion.  Second, Plaintiff contends the ALJ did not properly assess the opinion of a consultative examiner.   Third, Plaintiff challenges the ALJ's assessment of an opinion provided by a treating nurse practitioner. Fourth, Plaintiff asserts that the ALJ should have considered obesity to be a severe impairment and considered the impact of obesity on Plaintiff's limitations.  Fifth, Plaintiff argues that the ALJ's residual functional capacity analysis was flawed.  This Court will

address each argument in turn.

### a.    Treating Physician's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In July of 2007, Dr. Saeed A. Bajwa, Plaintiff's treating neurosurgeon, assessed "moderately severe paraspinal muscle spasm and tenderness in the posterior lumbar region." (T at 218).  He found the range of movement of the lumbrosacral spine "restricted

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

7

in lateral rotation and lateral bending on the right [more] than the left." (T at 218). Dr. Bajwa noted positive straight leg raising on at 70 degrees on the right; negative on the left. (T at 218). Dr. Bajwa recommended that Plaintiff see a pain specialist to consider epidural block and noted that "meanwhile" Plaintiff would "remain off work" and follow-up in six to eight weeks. (T at 218).

In September of 2007, Dr. Bajwa noted straight leg raising mildly positive at 90 degrees on the right; negative on the left. (T at 217). He strongly recommended that Plaintiff consult with a pain management specialist, found that Plaintiff did not have a "surgically correctable lesion," and discharged Plaintiff from his care. (T at 217).

The record is rather unclear regarding Dr. Bajwa's assessment of Plaintiff's limitations. Larry Oney, a physician's assistant, dictated a note for Dr. Bajwa in April of 2007, in which Plaintiff was described as "disabled for work for the short term." (T at 188). As noted above, following a subsequent appointment, Dr. Bajwa noted that Plaintiff would "remain off work" pending a follow-up appointment, but it is not clear whether this statement was intended as an assessment of Plaintiff's ability to perform work in general or whether the doctor was simply describing Plaintiff's employment status. (T at 218). In context, the former conclusion seems more likely, but Dr. Bajwa made no reference to Plaintiff's ability to work (or employment status) in his notes of the follow-up (and final) visit in September 2007. (T at 217).

The ALJ referenced Dr. Bajwa's general findings, but made no reference to the "remain out of work" comment. (T at 16). It appears the ALJ either overlooked this statement or did not consider it to be an "opinion" regarding Plaintiff's ability to perform work. Because the ALJ did not discuss it or develop the record (by, for example, contacting

Dr. Bajwa for clarification), this Court cannot determine which explanation is correct.  At a minimum, the ALJ should have discussed this aspect of Dr. Bajwa's notes and should have re-contacted the surgeon for clarification.

The ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

The ALJ also placed undue weight on Dr. Bajwa's finding that Plaintiff was not a candidate for surgery.  Specifically, the ALJ supported his decision by referencing, on multiple occasions, the fact that Plaintiff "did not need surgery." (T at 15)("the neurosurgeon concluded that the claimant did not need surgery," "no surgery was scheduled, no surgery was needed, and no surgery occurred") (T at 16)([Dr. Bajwa] "did not find a need for surgery . . . ."). The ALJ also described Plaintiff's treatment as "conservative and non-aggressive." (T at 17).  The ALJ clearly considered Dr. Bajwa's statement that Plaintiff was not a surgical candidate as evidence that Plaintiff's condition was not disabling.  The Commissioner makes the same suggestion, arguing that "Dr. Bajwa stated that plaintiff did

9

not have a condition that *warranted* surgery . . . ." (Docket No. 15 at p. 17)(emphasis added).

However, that is not, in fact, what Dr. Bajwa found. Rather, the neurosurgeon simply opined that Plaintiff did not have "a surgically correctable lesion." (T at 217). The fact that Plaintiff's condition could not be corrected by surgery does not establish that it was not disabling; it simply means it could not be treated surgically. Indeed, Dr. Bajwa "strongly recommended" consultation with a pain management specialist, indicating that he credited Plaintiff's allegations of significant pain and limitations. (T at 217).

Thus, the ALJ inaccurately characterized the evidence and inserted his own medical judgment concerning the scope and meaning of Dr. Bajwa's conclusion that Plaintiff was not a surgical candidate. This was improper. See Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir.2008)(noting that the "ALJ and the judge may not 'impose[ ] their [respective] notion[s] that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered.... [A] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.'")(quoting Shaw v. Chater, 221 F.3d 126, 134-35(2d Cir.2000)).

In sum, it was incumbent upon the ALJ to address the ambiguity regarding Dr. Bajwa's assessment and avoid substituting his own judgment regarding the relative importance of the fact that Plaintiff was not a surgical candidate. Dr. Bajwa's assessment should therefore be revisited on remand, with further development of the record (e.g. re-contacting Dr. Bajwa).

### b.    Consideration of Consultative Examiner's Assessment

Dr. James Naughten performed a consultative examination and issued a report dated March 7, 2007.  He opined that Plaintiff should avoid smoke, dust, and respiratory irritants. (T at 184).  Dr. Naughten assessed no limitations with regard to sitting or standing; but "[m]oderate limitation for walking and climbing stairs." (T at 184).  He opined that Plaintiff should use a cane as needed for pain, weightbearing, and balance.  Dr. Naughten further assessed that Plaintiff might need to be restricted from activities requiring "mild to greater exertion" in terms of lifting, carrying, and handling objects due to the fact that he would be having a lumbar surgical procedure.[5]  Dr. Naughten requested documentation regarding that procedure. (T at 184).

The ALJ gave "some weight" to Dr. Naughten's opinion. (T at 15).  With regard to the consultative examiner's conclusion that Plaintiff might need to be restricted from activities requiring "mild to greater exertion" in terms of lifting, carrying, and handling objects, the ALJ found this aspect of the assessment inoperative because it was linked to the anticipated surgical procedure, which did not ultimately occur. (T at 15).  Specifically, the ALJ reasoned that the limitations noted by Dr. Naughten did not apply because "no surgery was scheduled, no surgery was needed, and no surgery occurred." (T at 15).  Again, the ALJ substituted his medical judgment concerning the surgery issue.  The ALJ's suggestion that surgery was not "needed" implies that Plaintiff's condition was not serious enough to warrant surgery.  However, as discussed above, a fair reading of the evidence

_____

[5]Plaintiff discussed his desire for surgical intervention with Dr. Bajwa's physician's assistant. (T at 219).It appears Plaintiff assumed he was having surgery and advised the consultative examiner accordingly. (T at 184).  Dr. Bajwa thereafter reviewed a lumbosacral spine MRI and determined that Plaintiff did not have a "surgically correctable lesion."

leads to the conclusion that Dr. Bajwa considered Plaintiff's condition serious, notwithstanding the fact that he was not a surgical candidate.

Further, it is not clear whether the consultative examiner meant to imply that Plaintiff might need to be restricted from lifting/carrying/handling activities requiring "mild to greater exertion" *after* having the then-anticipated surgery (i.e. as an aftereffect of the surgery or incident of Plaintiff's recovery); or whether the consultative examiner found that the apparent need for surgery was indicative of a serious impairment.

In either event, the consultative examiner's opinion should have been revisited in light of the fact that surgery was ruled out as an option and Plaintiff was referred to a pain management specialist.   Certainly, the fact that the consultative examiner referenced the use of a cane as needed indicates that he found some limitation with regard to lifting/carrying/handling even apart from any surgical aftereffects.   The record does not indicate whether Dr. Naughten's request for follow-up documentation regarding the anticipated surgery was granted by, for example, advising him that surgery had been ruled out and that Plaintiff had been referred for pain management.   This question should be addressed on remand and further consideration should be given to whether the ALJ's consideration of Dr. Naugten's opinion was colored by his inaccurate conclusion that Plaintiff's condition was not serious because surgery was "not needed."

### c.    Consideration of Nurse Practitioner's Opinion

Ryan Little, Plaintiff's treating nurse practitioner, completed a medical questionnaire in June of 2009.   Mr. Little opined that Plaintiff would need a 10 minute rest period every hour.   He assessed that Plaintiff would be expected to have a substantial number of unscheduled absences (four or more per year) from work if he attempted sedentary work

on a sustained basis.  Mr. Little characterized Plaintiff's pain as mild and his fatigue as moderate. (T at 236).  Mr. Little assessed that Plaintiff had no limitation with regard to sitting; could stand for 6 hours out of an 8-hour day; and could lift less than 10 pounds for 3-8 hours per day and more than that for up to 3 hours per day. (T at 237).  He noted that Plaintiff needed a cane to stand/walk and  found that Plaintiff's concentration and ability to sustain a work pace were mildly impaired and described Plaintiff's condition as "back pain - mild disc bulges." (T at 237-38).

Mr. Little opined that Plaintiff had no limitation with regard to his ability to maintain attention and concentration for extended periods of time or with respect to his ability to sustain an ordinary routine without special supervision; moderate limitations in terms of performing activities within a schedule, maintaining regular attendance and/or being punctual within customary tolerances; and moderate limitation with respect to his ability to complete a normal workday and work week without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (T at 239).

Although a nurse practitioner may be a treating health care provider, not all treating health care providers are "treating sources" under the applicable Social Security Regulations.  A "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." 20 C.F.R. § 404.1502.   There are five categories of "acceptable medical sources." 20 C.F.R. § 404.1513 (a). Nurse practitioners are not included within those categories.  Nurse practitioners are listed among the "other medical

sources," whose opinion may be considered as to the severity of the claimant's impairment and ability to work, but their conclusions are not entitled to any special weight. 20 C.F.R. § 416.913 (d)(1).

While an "other source" opinion is not entitled to any special weight, the assessment should still be given some weight, especially when there is a treatment relationship with the claimant. Pogozelski v. Barnhart, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant"); see also Mejia v. Barnhart, 261 F. Supp.2d 142, 148 (E.D.N.Y.2003 (finding that the ALJ should have afforded a treating therapist's opinions at least a little weight where the therapist "saw plaintiff on a regular basis and [ ] offered a diagnosis consistent with that of the treating psychiatrist"); White v. Comm'r, 302 F. Supp.2d 170, 174-76 (W.D.N.Y.2004) (reversing where the ALJ failed to give appropriate weight to the plaintiff's social worker, who had a regular treatment relationship with the plaintiff and whose diagnosis was consistent with the treating psychiatrist); Rivera v. Bowen, 665 F.Supp. 201, 206 (S.D.N.Y.1987) (finding that the opinions of chiropractors and physical therapists must be accorded at least some weight).

The ALJ gave Mr. Little's assessment of Plaintiff's exertional limitations some weight, but assigned "limited weight" to Mr. Little's conclusion that Plaintiff needed to use a cane and would require frequent breaks. (T at 16).  To the extent the ALJ discounted Mr. Little's finding regarding the use of a cane, this was error, as that finding was readily supported by the record, including the consultative examiner's assessment. (T at 184). As such, while Mr. Little's opinion was not entitled to any special weight, his assessment, combined with

14

that of the consultative examiner, clearly substantiated Plaintiff's claim that he needed a cane to ambulate.

The ALJ correctly noted that Mr. Little's finding with regard to Plaintiff's non-exertional impairments (e.g. the need for frequent breaks) was contrary to his treatment notes, which indicated that Plaintiff had no neurological, psychiatric, and emotional issues and described Plaintiff as "[g]enerally feeling well." (T at 224, 228).  It is possible Mr. Little's assessment of Plaintiff's non-exertional limitations was based on Plaintiff's obesity.  As discussed below, the ALJ did not give adequate consideration to the issue of obesity in his decision.

Accordingly, the ALJ's consideration of Mr. Little's opinion should be revisited on remand after further development of the record concerning Dr. Bajwa's opinion and the consultative examiner's assessment, as the record, as supplemented, may tend to support or detract from Mr. Little's findings.  Likewise, for the reasons outlined below, the ALJ should give explicit consideration to the limiting effect of Plaintiff's obesity.

### d.    Obesity

Although "[o]besity is not in and of itself a disability; . . . [it] may be considered severe-and thus medically equal to a listed disability-if alone or in combination with another medically determinable ... impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." Cruz v. Barnhart, No. 04-CV-9011 (GWG), 2006 WL 1228581, at *10 (S.D.N.Y. May 8, 2006); see also SSR 02-1p; 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(Q) (instructing adjudicators to assess carefully the combined effects of obesity and musculoskeletal ailments during Steps 2 and 4 because "[o]besity is a medically determinable impairment that is often associated with disturbance of the

musculoskeletal system ... The combined effects of obesity with musculoskeletal impairments can be greater than the effect of each ... considered separately.").

The Social Security Administration has said that the ALJ is obligated to "explain how [he] reached [his] conclusions on whether obesity caused any physical or mental limitations." SSR 02-1 p, 2000 WL 628049, at *7.

In this case, the record established that Plaintiff was 5' 9" tall and weighed 254 pounds. (T at 182, 187, 221).  Dr. Talati, a treating physician, described Plaintiff as "Obese." (T at 165).  The ALJ made no mention of obesity in his decision and (apparently) did not assess whether Plaintiff's obesity, in combination with his other impairments, limited his ability to perform work.  The Commissioner attempts to excuse this omission by noting that only Dr. Talati specifically diagnosed obesity.  This suggestion is meritless.  Plaintiff's body mass index ("BMI") was 37.5, which is well above the threshold of 30 for being considered obese. SSR 02-1p.  The fact that only one physician used the word "obese" does not change the clinical fact of Plaintiff's obesity.

The Commissioner also argues that the ALJ's failure to address obesity was harmless because Plaintiff's treating providers were aware of his weight problem and presumably incorporated that issue when assessing his limitations.  There is case law supporting this argument.  See, e.g., Guadalupe v. Barnhart, No. 04-CV-7644, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24,2005) (citing Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir.2004)) (reasoning that the ALJ "relied on" medical evidence that made no mention that Plaintiff was obese even though it must have been apparent at the time of the assessment and thus the ALJ "sufficiently, if somewhat indirectly, accounted for Plaintiff's obesity"); Martin v. Astrue, No. 5:05-CV-72, 2008 WL 4186339, *3-4, 11-12 (N.D.N.Y. Sept. 9, 2008)

16

(finding ALJ's failure to explicitly address Plaintiff's obesity harmless error, because the ALJ "utilized" the physical limitations from various doctors who considered Plaintiff's obesity); but see Hogan v. Astrue, 491 F.Supp.2d 347, 355 (W.D.N.Y.2007) (finding error even though the ALJ found Plaintiff's obesity a severe impairment, because it was "unclear whether he considered plaintiff's obesity at steps four and five of the disability evaluation").

In the present case, as discussed above, the ALJ did not discuss Dr. Bajwa's "remain out of work" finding or adequately address Dr. Naughten's reference to ""mild to greater exertion" in terms of lifting, carrying, and handling. It is quite possible that both providers considered Plaintiff's obesity when formulating their conclusion. However, because the ALJ did not adequately address these findings, his failure to discuss the potential limiting effects of obesity cannot be considered harmless. In other words, the Commissioner cannot salvage the ALJ's decision by suggesting that obesity was incorporated within findings the ALJ ultimately did not accept or adequately discuss. Likewise, it is possible that Mr. Little's findings with regard to Plaintiff's need for frequent rest breaks (which the ALJ discounted), where based, in part, on obesity. For these reasons, the impact of Plaintiff's obesity should be discussed and determined, in accordance with SSR 02-1p, on remand.

### e.   RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing

17

basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

The ALJ concluded that Plaintiff retained the residual functional capacity to lift/carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk for 6 hours in an 8-hour day; and sit for 6 hours in an 8-hour day.  The ALJ found that Plaintiff could occasionally stoop, kneel, crouch, and crawl; but should not climb ladders or scaffolds, and should avoid concentrated exposure to fumes, dust, odors, and gases. (T at 14-17).

Plaintiff challenges this finding for substantially the reasons outlined above, namely, that the ALJ did not adequately evaluate important evidence of record and improperly characterized Plaintiff's treatment as conservative.  For the reasons outlined above, this Court finds that the ALJ's RFC determination must be revisited.  The ALJ did not sufficiently address or develop the record, which suggested greater limitations than the ALJ found. Moreover, the ALJ substituted his own assessment of the nature of Plaintiff's treatment and mischaracterized Dr. Bajwa's finding that Plaintiff was not a surgical candidate as an indication that Plaintiff's condition was not as severe as he alleged.  Accordingly, based on the foregoing discussion, a remand is recommended.

**3.     Remand**

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the reasons outlined above, this Court recommends that Plaintiff be GRANTED judgment on the pleadings, that the Commissioner's motion for judgment on the pleadings be DENIED, and that this case be remanded for further administrative proceedings pursuant to sentence four of Section 405 (g).

Respectfully submitted,


Victor E. Bianchini
United States Magistrate Judge

Dated:   May 21, 2012

19

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not,* presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc.

20

v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

May 21, 2012

Victor E. Bianchini
United States Magistrate Judge